IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ERIC L. WILLIAMS,
    Petitioner,

vs.                              Case No. 5:09cv182/MCR/EMT

KENNETH S. TUCKER,[1]
    Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (docs. 16, 18). Petitioner was directed to file a reply (doc. 17) but did not do so.

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record (*see* doc. 18).[2] Petitioner was charged in the Circuit Court in and for Bay County, Florida, Case No. 05-3518, with one count of possession of cocaine (doc.

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections. Secretary Tucker is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 18). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

1 at 1; doc. 18, Ex. B at 47). Following a jury trial on February 9, 2007, he was found guilty as charged (Ex. B at 52, Ex. C). He was sentenced on February 28, 2007, to five (5) years of imprisonment, to run consecutively to any active sentence he was then serving, with presentence credit of 504 days (Ex. B at 57–61, 110–23).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-1148 (Ex. B at 73). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. D). Petitioner did not file a pro se initial brief (*see* Ex. E). The First DCA affirmed the judgment per curiam without written opinion on September 11, 2007 (*id.*). Williams v. State, 965 So. 2d 129 (Fla. 1st DCA 2007) (Table). Petitioner did not seek further review.

On August 8, 2008, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F at 1–12). On September 29, 2008, the state circuit court summarily denied the motion (*id.* at 15–17). Petitioner appealed the decision to the First DCA, Case No. 1D08-5521 (*id.* at 121, Ex. G). The First DCA affirmed the decision per curiam without written opinion on March 6, 2009, with the mandate issuing April 1, 2009 (Ex. H). Williams v. State, 4 So. 3d 1229 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on May 14, 2009 (doc. 1). Respondent concedes the petition is timely (doc. 16 at 2–3).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

>  to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or

unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal

court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at * 18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

   A. Ground One: "Ineffective assistance of counsel where counsel failed to object to contradictory testimony."

Petitioner states during his trial, Officer Frederick Brown gave contradictory testimony regarding the location of a plastic bag of crack cocaine (doc. 1 at 4). Petitioner contends counsel was ineffective for failing to object to or challenge the testimony with "prior oral or written statements" (*id.* at 4–5). Petitioner argues the outcome of his trial would have been different if counsel had objected or challenged Officer Brown's testimony regarding the location of the cocaine (*id.* at 5). Petitioner additionally contends counsel's failure to challenge the inconsistency prevented Petitioner from raising the issue on appeal (*id.*).

Respondent states it appears Petitioner exhausted his claim by presenting it in his Rule 3.850 motion and appealing the state circuit court's denial of the motion (doc. 16 at 5). Respondent contends Petitioner failed to show the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 8–10).

        1.        Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310,

Case No. 5:09cv182/MCR/EMT

1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

    2.    Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Ground One in his Rule 3.850 motion (Ex. F at 3–5). He argued defense counsel failed to object when Officer Brown's trial

testimony differed from his written report concerning the location of the cocaine found in the vehicle in which Petitioner was a passenger (*id.*).

In the written order denying Petitioner's post-conviction motion, the state circuit court correctly identified the Strickland standard as the controlling legal standard (Ex. F at 15). The state circuit court found as fact that defense counsel pointed out the discrepancy between Officer Brown's report and his trial testimony, and counsel focused on the discrepancy in his closing argument (*id.*). Therefore, counsel's performance was not deficient in this regard (*id.*).

Petitioner appealed the state circuit court's decision to the First DCA. The appellate court affirmed per curiam without written opinion. As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, 633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Petitioner has not rebutted the state court's factual findings with clear and convincing evidence. Additionally, the findings are supported by the trial transcript. On direct examination, Officer Brown testified he saw a plastic bag of cocaine between Petitioner and the center console of the car where Petitioner's left hand was located (Ex. C at 19). He stated the bag was located on Petitioner's leg (*id.* at 20, 22). On cross-examination, defense counsel impeached Officer Brown's testimony with his written report, which stated that Brown noticed the bag of cocaine lying on the floorboard of the vehicle (*id.* at 31–32). Additionally, during defense counsel's closing argument, counsel pointed out the inconsistency between Officer Brown's testimony and the written report with regard to the location of the bag of cocaine (*id.* at 77).

Based upon the trial evidence, the state court reasonably concluded defense counsel did not perform deficiently in his cross-examination of Officer Brown regarding the location of the cocaine. Therefore, Petitioner has failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was contrary to or an unreasonable application of Strickland.

B.  Ground Two: "Ineffective assistance of counsel where counsel misadvised defendant not to testify at his trial."

Petitioner states defense counsel "knowingly and deliberately coerced, misadvised and intimidated" him into not testifying at trial under the "guise" that to do so would allow the prosecutor to expose Petitioner's prior felony convictions during cross-examination, which would cast Petitioner in an unfavorable light to the jury (doc. 1 at 4, 6). Petitioner states counsel infringed upon his right to testify (*id.* at 6). He contends there is a reasonable probability he would have prevailed at trial had he not been deceived by counsel's erroneous advice (*id.*).

Respondent states it appears Petitioner exhausted his claim by presenting it in his Rule 3.850 motion and appealing the state circuit court's summary denial (doc. 16 at 5). Respondent contends Petitioner failed to show the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 11–13).

1.  Clearly Established Federal Law

A criminal defendant's right to testify on his own behalf "is one of the rights that are essential to due process of law in a fair adversary process,'" and it is "[e]ven more fundamental to a personal defense than the right of self-representation." Rock v. Arkansas, 483 U.S. 44, 51–52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (quoting Faretta v. California, 422 U.S. 806, 819 n.15, 95 S. Ct. 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)) (finding right rooted in Due Process Clauses of Fifth and Fourteenth Amendments, in Compulsory Process Clause of Sixth Amendment, and in Fifth Amendment guarantee against compelled testimony). The appropriate vehicle for a claim that defense counsel's acts led to a violation of this right is an ineffective assistance of counsel claim. *See* United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992); *see also* Brown v. Artuz, 124 F.3d 73, 77–78 (2d Cir. 1997). The clearly established federal standard for evaluating claims of ineffective assistance of counsel is the Strickland standard set forth *supra*.

2.  Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Ground Two in his Rule 3.850 motion (Ex. F at 6–7). In the motion, Petitioner alleged he would have testified that the reason he was not able to "keep still" in the car as the arresting officer ordered, was because of a knee injury and infection, for which he required hospital treatment (*id.* at 7).

The state circuit court determined that defense counsel provided Petitioner with correct advice, in accordance with Florida law, that if Petitioner had testified, the prosecutor could have asked him on cross-examination whether he had any prior felony convictions or convictions for crimes involving dishonesty or false statements (Ex. F at 16) (citing Fla. Stat. § 90.610). The court further noted that under Florida law, if Petitioner took the stand and lied about his criminal background, the jury could have learned the specific nature of the offense or offenses (*id.*) (citing Hicks v. State, 666 So. 2d 1021 (Fla. 4th DCA 1996)). The court concluded counsel did not misadvise Petitioner or perform deficiently (*id.*).

The state circuit court further concluded Petitioner could not satisfy the prejudice prong of the Strickland standard. The court found that the trial transcript demonstrated that Petitioner's knee condition was brought out at trial through other witnesses (Ex. F at 16). The court found that defense witness Colby Lattie testified she had picked up Petitioner to take him to the hospital because his leg hurt, it was badly swollen and had turned color, and it was infected (*id.*). The court additionally found that defense counsel asked Officer Billy Carstarphan during cross-examination whether Petitioner's squirming as he sat in Ms. Lattie's car could have been related to the pain in his leg, and counsel implied that that was the case (*id.*). The court also noted that during closing argument, defense counsel argued that Petitioner had gotten into the vehicle only for a ride to the hospital and had no idea that drugs were in the car (*id.*). Based upon these findings, the court concluded defense counsel was able to get the substance of Petitioner's proposed testimony to the jury without revealing Petitioner's prior felony convictions (*id.*).

The state court's factual findings regarding defense counsel's eliciting information from witnesses about the condition of Petitioner's leg, and counsel's closing argument concerning the reason for Petitioner's being in the car, are supported by the trial transcript (Ex. C at 43, 52–55, 78–79). Additionally, this federal court must abide by the state court's interpretation of state law. *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v.

Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Under Florida law, when a defendant testifies on his own behalf, the State may inquire as to whether he has been convicted of a crime punishable by prison in excess of one year or a crime, including a misdemeanor, involving dishonesty or a false statement.  Fla. Stat. §§ 90.608, 90.610 (2003); Mead v. State, 86 So. 2d 773 (Fla. 1956); Hicks v. State, 666 So. 2d 1021 (Fla. 4th DCA 1996); Jackson v. State, 570 So. 2d 1388, 1390 (Fla. 1st DCA 1990).  A crime involving dishonesty includes crimes involving theft, burglary, and related crimes.  *See* Hicks, 666 So. 2d at 1023 (citing State v. Page, 449 So. 2d 813 (Fla. 1984)).  Therefore, this court is bound by the state court's determination that Florida law permits a prosecutor to cross-examine a testifying defendant about whether he had any prior felony convictions or convictions for crimes involving dishonesty or false statements, and to inquire as to the specific nature of the offense of offenses if the defendant is untruthful.

In light of the state court's conclusion that defense counsel properly advised Petitioner that Florida law permitted the State to raise the issue of his prior convictions if he testified, Petitioner has failed to show that counsel deprived him of the ability to knowingly decide whether or not to testify, or that counsel otherwise interfered with his right to testify.  Further, counsel was able to provide the jury with the information Petitioner wanted the jury to know (that is, that he was suffering from a medical condition involving his leg) without revealing Petitioner's prior record of one misdemeanor conviction for theft and at least nine prior felony convictions, including one for robbery and one for attempted burglary of a dwelling (*see* Ex. A at 53–55).  Petitioner failed to show deficient performance by counsel, or that there was a reasonable probability of acquittal had he testified.  Therefore, the state court's adjudication of his claim was not an unreasonable application of Strickland.

      C.      Ground Three: "Ineffective assistance of counsel where counsel failed to object to improper comments of prosecutor."

Petitioner argues defense counsel should have objected to comments by the prosecutor during closing arguments (doc. 1 at 7–8).  Petitioner states the prosecutor improperly stated that the testimony of a defense witness, Ms. Lattie, was improbable and hard to believe (*id.* at 8).  Additionally, the prosecutor made the following allegedly objectionable comments:  (1) "Some

people are put under oath, and that oath means nothing to them," (2) "it's really just an amazing inference for the defense to ask you [the jury] to believe" Ms. Lattie's testimony, and (3) Officer Carstarphan "gave you the best evidence" (*id.*).  Petitioner argues the prosecutor impermissibly implied that the officer's testimony was more believable than Ms. Lattie's, and by doing so, shifted the burden of proof from the State to the defense (*id.*).  Petitioner contends defense counsel's failure to object was prejudicial in that it affected the outcome of the trial and prevented Petitioner from seeking appellate review of the issue (*id.*).

Respondent states it appears Petitioner exhausted his claim by presenting it in his Rule 3.850 motion and appealing the state circuit court's summary denial (doc. 16 at 5).  Respondent contends Petitioner failed to show the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 13–15).

    1. Clearly Established Federal Law

As discussed *supra*, the Strickland standard is the clearly established standard for evaluating claims of ineffective assistance of counsel.

    2. Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Ground Three in his Rule 3.850 motion (Ex. F at 8–10).  The state circuit court found that the prosecutor was simply commenting on the evidence presented at trial and the reasonable inferences that could be drawn from it (*id.* at 16).  The court also determined that the prosecutor's comments, viewed in the context of the closing arguments in their totality, did not warrant a reversal of Petitioner's conviction (*id.*). The court concluded that Petitioner failed to demonstrate deficient performance or prejudice as to this issue (*id.*).

Before examining the remarks that Petitioner believes should have been challenged by his counsel, this court is mindful that a prosecutor's improper comments to the jury can deprive a criminal defendant of his due process rights to a fundamentally fair trial.  Attempts to bolster a witness by vouching for his credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)).  A jury could believe that the prosecutor personally believed in the witness' credibility "if the

prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony." *Id.* (citation omitted). Thus, the court must examine whether (1) the prosecutor explicitly personally assured the witness' credibility, or (2) the prosecutor implicitly vouched for the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony. United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing Sims, 719 F.2d at 377).

However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991). Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper. United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).

The trial transcript shows that Ms. Colby Lattie testified she had previously been convicted of multiple felonies, including several drug offenses, burglary, and driving without a license (Ex. C at 55–56). She also testified she was Petitioner's girlfriend at the time of the offense, she was still his good friend, and she did not want to see him convicted of any criminal charges (*id.* at 57–58). Ms. Lattie admitted that the night before the morning of the offense, she had been "partying all night long, had been different places smoking crack all night" (*id.* at 55–56). She admitted that cocaine sometimes affected her ability to recall events (*id.* at 56). On direct, Ms. Lattie testified she was in possession of drugs in the vehicle, thereby suggesting the cocaine was hers, not Petitioner's (*id.* at 54). However, on cross-examination, she admitted that her description of the packaging of the cocaine (that is, a plastic baggy that had been cut off the corner of a bigger baggy with the ends tied together (*id.* at 59–60)) was not similar to the packaging of the cocaine seized from Petitioner (a small jeweler's bag (*id.* at 60)). Indeed, she eventually acknowledged the cocaine found near or on Petitioner was probably not hers (*id.* at 60–61).

The prosecutor's closing argument included the following, in relevant part:

> Now, you've heard some interesting testimony today. You heard some testimony from the defendant's one time and, perhaps, future girlfriend. And I ask you to critically analyze that evidence. And the judge will provide you, will inform you there are several different ways of weighing the credibility of evidence. Somebody's ability to recall the events, [sic] whether their testimony is consistent with previous testimony they have given. But, ladies and gentlemen, when you get down to it, the testimony you heard from Ms. Lattie, she was on a 12, 15 hour crack binge, had been up all night smoking crack, picked up the defendant and had no idea where he was ten minutes before she picked him up and may have left some cocaine in the car. She testified pretty convincingly, now twice, how it was packaged. And I submit to you, ladies and gentlemen, it wasn't packaged anything like this.
>
> The judge will ask you to consider, does anybody have—when you're considering the testimony of a witness, do they have something to gain. And I submit to you it is obvious that Ms. Lettie has formed some sort of attachment to the defendant. It is obvious she does not wish the defendant convicted. And ladies and gentlemen, I ask you to apply all those factors the judge instructs you when analyzing her testimony.
>
> The fact of the matter is, common sense suggests that some people come into court, are put under oath and for some people that oath means nothing. I submit to you the judge has instructed you that you are entirely free to consider her past felony convictions, and she was very open about it. And you're entirely free to ask yourself the question, if someone has this many felony convictions does coming into a courtroom under oath, is that an impediment to how they, the fact that they're under oath, is that an impediment to their testimony. You're allowed to disbelieve, believe any testimony you've heard today. You're allowed to consider the motives of the individuals who are testifying. And I submit to you, ladies and gentlemen, that a great deal of this—I submit to you that you have the ability to disregard all, most or certainly some of Ms. Lattie's testimony.
>
> Now, I would ask you to consider when you get back there how she described the day because I thought it was telling. She describes a crack binge but doesn't, goes to some distance to separate both the other individuals in the car from those actions. And yet you heard testimony that the lady who was in the back seat, who, another person that Ms. Lattie had just picked up, was holding a crack pipe, threw it away from her and denied it.
>
> I submit to you, ladies and gentlemen, there was more going on there than Ms. Lattie has told you. And you are certainly able to come to that determination. I also submit to you, ladies and gentlemen, if you were to have believed everything Ms. Lattie said, albeit improbable, that she could leave a piece of crack cocaine in

> the car and the defendant somehow could have it rise, place itself on his leg without him knowing about it. It's really just an amazing inference for the defense to ask you to believe.
>
> Ladies and gentlemen, I anticipate that [defense counsel] will step up and make some sort of reference to a synopsis of the report of the officer having a discrepancy between it and the narrative or the testimony you heard today. I will submit to you that I would ask you to consider whether Officer Carstarphan said those are not typed up by the officers, and they are, in fact, typed up by third parties. And I submit to you that the best evidence that you have heard today came out of Officer [Brown's] mouth about where he saw the cocaine, what the defendant's actions were before he saw the cocaine. And . . . I ask you, ladies and gentlemen, to come back with a judgment of guilty for the defendant, . . . . But this is about the evidence, about what evidence you've heard.

(Ex. C at 73–77).

Upon review of the prosecutor's comments in context, the undersigned concludes that Petitioner failed to show that defense counsel's failure to object to any of the comments was unreasonable. None of the prosecutor's comments identified by Petitioner was an explicit personal endorsement of Officer Carstarphan or Officer Brown's credibility. Nor did the prosecutor argue credibility of any witness (prosecution or defense) based on evidence not before the jury. Furthermore, Petitioner failed to show a reasonable probability that the outcome of his trial would have been different if defense counsel had objected to the comments. Therefore, Petitioner has failed to demonstrate that the state court's denial of his claim was an unreasonable application of Strickland.

IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L.

Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 27th day of September 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**